UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

RAILROAD MAINTENANCE AND )
INDUSTRIAL HEALTH AND WELFARE )
FUND, )
 )
   Plaintiff, )
 )
   v. )  No. 10-3305
 )
MATTHEW E. HACKER, individually, )
VINCENT HERMAN, individually, and )
TRACK SERVICES, INC. )
 )
   Defendants. )

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

   This matter is before the Court on the Motion to Dismiss Second

Amended Complaint (d/e 19) (Motion) of Defendants Matthew E.

Hacker, Vincent Herman, and Track Services, Inc.  Because the

allegations in Plaintiff's Second Amended Complaint are sufficient to

avoid dismissal under Federal Rule of Civil Procedure 12(b)(6),

Defendants' Motion is DENIED.

# I. BACKGROUND

A. The Second Amended Complaint

On March 24, 2011, Plaintiff filed its three-count Second Amended Complaint (d/e 18) which alleges as follows. Plaintiff Railroad Maintenance and Industrial Health and Welfare Fund (the Fund) is an employee benefit plan created and administered pursuant to a Restated Agreement and Declaration of Trust. The Fund is administered in accordance with the Labor Management Relations Act of 1947 and the Employee Retirement Income Security Act of 1974 (ERISA). The Fund entered into an agreement with H&H Trackworks, Inc. to receive employer contributions on behalf of the corporation's employees.

H&H Trackworks, Inc. is a railroad and industrial equipment contractor located in Bartonville, Illinois, that employed members of Operating Engineers Local 150 who participated in the Fund pursuant to a Participation Agreement and Letter of Assent. Defendant Hacker is a five percent owner and the President of H&H Trackworks, Inc. Defendant Herman owns the remaining ninety-five percent interest in

H&H Trackworks, Inc. and serves as its Secretary.  Defendant Track Services, Inc. is a Tennessee corporation owned by Tracy J. Hacker and Barb Herman, the spouses of Defendants Matthew Hacker and Vincent Herman.

Count I of the Second Amended Complaint alleges that Hacker and Herman each breached the duties incumbent upon an ERISA plan fiduciary pursuant to 29 U.S.C. §§ 1104 and 1145.  Count II  alleges that Hacker and Herman each breached the terms of a Trust Agreement between Plaintiff and H&H Trackworks.  Finally, Count III  alleges that Track Services, Inc. is the alter ego of H&H Trackworks and is therefore liable for the amounts owed the Fund.

B. Allegations Relating to H&H Trackworks' Bankruptcy

Plaintiff brought this suit to recover unpaid employer contributions, liquidated damages, interest, and audit costs it alleges are owed to the Fund. Initially, Plaintiff sought to recover directly from H&H Trackworks, Inc.  Plaintiff hired Romolo and Associates, an accounting firm, to do anaudit of H&H Trackworks' payroll records.

Romolo and Associates determined that H&H Trackworks owed a total of $41,281.16 in contributions, interest, liquidated damages, and audit costs for a period from January 1, 2006 through December 31, 2008. Further, except in June 2010, Defendants submitted contribution reporting forms to the Fund without contribution payments from January 1, 2009 through October 2010. Including the cost of the audit, Plaintiff alleges Defendants owe a total of $276,084.22.  However, Plaintiff's suit against H&H Trackworks was dismissed due to H&H Trackworks' bankruptcy.

On October 28, 2010, H&H Trackworks filed a Chapter 11 bankruptcy.  On November 22, 2010, at the first meeting of creditors in the bankruptcy proceeding, Defendant Hacker stated under oath that he was responsible for deciding which H&H Trackworks' creditors to pay, and that he decided not to pay Plaintiff the contributions H&H Trackworks owed.  In addition, Hacker noted that Defendant Herman contributed significant capital to the business operations of the corporation.  Further, Hacker stated that, prior to H&H Trackworks'

bankruptcy filing, H&H Trackworks had "migrated customers" to a new, nonunion company, Track Services, Inc.  Hacker also concurred with the statement  that Track Services, Inc. was a "spin off" corporation of H&H Trackworks.  Track Services is in the same business as H&H Trackworks and uses H&H Trackworks' equipment in its operations.  Ten employees laid off by H&H Trackworks were rehired by Track Services.  As noted earlier, Track Services, Inc. is owned by Tracy J. Hacker and Barb Herman, the spouses of Defendants Hacker and Herman.

Prior to its bankruptcy, H&H Trackworks had assets of $1,845,616.  The company had gross receipts of $2,819,787 in 2009 and $1,500,000 in 2010.  Following its bankruptcy filing, H&H Trackworks has paid Track Services $48,500.

C. Agreements between the Fund and H&H Trackworks

There are multiple agreements bearing on the present case.  As noted, H&H employees participated in the Fund pursuant to a Participation Agreement and Letter of Assent.  Plaintiff asserts that Defendants, through H&H Trackworks, are bound by the Letter of

Assent as well.  The Letter of Assent incorporates the terms and conditions of the Rail Transportation and Operation Agreement (RTOA).  Section 1(A)(1) of the RTOA provides in pertinent part that, "The Employer agrees to make payment to . . . the Railroad Maintenance and Industrial Health and Welfare Fund . . ."  Further, § 7F of the RTOA states, "[p]ayment . . . shall be made by the Employer no later than the fifteenth (15th) day of the month following the month for which the payments are required."  Finally, Article VI(B)(1) of the RTOA reads, "All contributions due and owing to any of the fringe benefit fund[s] mentioned in this Article are deemed and are considered to be trust funds"; the fringe benefit fund referenced is the Railroad Maintenance and Industrial Health and Welfare Fund.

Second, H&H Trackworks also agreed to be bound by the terms of the Trust Agreement of the Railroad Maintenance and Industrial Health and Welfare Fund.  The Trust Agreement stipulates that for:

> any willful violation of any of the requirements of this Trust Agreement . . . those officers and directors . . . who supervised the completion of the report form, signed report form, or can be determined to have had personal knowledge of such

conduct, shall be personally liable for any underpayment or other pecuniary loss to the fund as a result of such conduct.

The Trust Agreement goes on to mandate payment of employer contributions, payment of liquidated damages when appropriate, and payment of contributions, liquidated damages, and interest owed following an audit.

It is essential to note that the documents provided by Plaintiff obliged H&H Trackworks, Inc. to make monthly employer contributions to the Fund.  These contributions were calculated by multiplying a set contribution amount for each type of employee by the total number of employees of that type.

D. Defendants' Motion to Dismiss

On April 8, 2011, Defendants filed their Motion and an accompanying Memorandum in Support of its Motion to Dismiss the Second Amended Complaint.  Defendants contend that all three counts of the Second Amended Complaint fail to state a claim.  Defendants argue that Count I fails to state an actionable claim because all of its factual allegations pertain to actions taken by Hacker or Herman in their

capacities as corporate officers.  In addition, Defendants contend that,

under ERISA, personal liability for a breach of fiduciary duties should

not be permitted absent knowledge of one's status as a fiduciary.

Similarly, Defendants argue Count II should be dismissed because: (1)

Hacker signed the agreements between the Fund and H&H Trackworks

in only his corporate capacity; (2) Herman did not sign any of the

agreements; and (3) the language of the Trust Agreement which

purportedly creates personal officer and director liability is not

implicated by the pleaded facts.  Finally, Defendants argue that the

Second Amended Complaint fails to adequately plead facts creating the

likelihood that Track Services, Inc. acted as the alter-ego of H&H

Trackworks, Inc.

## II. STANDARD

A Rule 12(b)(6) motion to dismiss asserts that a complaint fails to

state a claim upon which relief may be granted.  See Fed.R.Civ.P.

12(b)(6); Patten v. Northern Trust Co., 703 F. Supp. 2d 799, 803 (N.D.

Ill. 2010).  To properly state a claim, a plaintiff must plead a "short and

plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). A complaint will survive a Rule 12(b)(6) challenge if it provides the defendant with fair notice of the claim's basis and establishes that, taken at face value, the requested relief is plausibly available. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); see also Bell Atlantic v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. See Bissessur v. Indiana University Bd. Of Trustees, 581 F.3d 599, 602 (7th Cir. 2009), citing Ashcroft, 129 S. Ct. at 1949. In evaluating such a motion, the court accepts as true all well-pleaded facts in the complaint and draws in favor of the plaintiff all reasonable inferences those facts entail. In re marchFIRST, Inc., 589 F.3d 901, 904 (7th Cir. 2009), citing Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008). Finally, allegations made "on information and belief" remain permissible when matters alleged are particularly within the defendants' knowledge. See

Fed.R.Civ.P. 8(a); <u>see</u> <u>also</u> <u>Trustees of the Auto. Mechanics' Industry</u>

<u>Welfare and Pension Funds Local 701 v. Elmhurt Lincoln Mercury</u>, 677

F. Supp. 2d 1053, 1054 (N.D. Ill. 2010).

### III.  ANALYSIS

A.  Count I: Breach of Fiduciary Duty

ERISA imposes a duty on fiduciaries to act "solely in the interest of

the participants and beneficiaries" "with the care, skill, prudence, and

diligence . . . that a prudent man acting in like capacity . . . would use."

29 U.S.C. § 1104(a)(1) and §1104(a)(1)(B).  A claim under ERISA

asserting a breach of fiduciary duty requires a showing that: (1)

defendant is a fiduciary; (2) defendant acted toward the plan in some

way covered by the statute; (3) a fiduciary duty imposed upon the

defendant was breached by that act; and (4) the breach caused damage

or loss to the plan.  <u>See</u> <u>Jenkins v. Yager</u>, 444 F.3d 916, 924 (7th Cir.

2006).  Officers and employees who are ERISA fiduciaries (and thus

"wear" both a corporate and a fiduciary "hat") are required to wear only

the fiduciary "hat" when making fiduciary decisions.  <u>Pegram v.</u>

Herdrich, 530 U.S. 211, 225, 120 S.Ct. 2143, 147 L. Ed. 2d 164 (2000).

The status of unpaid contributions is the crux of the present action. Taken in the light most favorable to the Plaintiff, the pleadings raise the inference that, if the Defendants owed the Fund a fiduciary duty, the Fund has a plausible claim for relief.

Courts considering ERISA claims consistently have given the term "fiduciary" a liberal interpretation. See Central Ill. Carpenters Health & Welfare Trust Fund v. S & S Fashion Floors, Inc., 516 F. Supp. 2d 931, 934 (C.D. Ill. 2007), citing Baker v. Kingsley, 387 F.3d 649, 663-664 (7th Cir. 2004), Mutual Life Ins. Co. of N.Y. v. Yampol, 840 F.2d 421, 425 (7th Cir. 1988). An individual is a fiduciary with respect to an ERISA plan "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). It follows that an employer of ERISA-participating employees does not acquire fiduciary status by means of

such employment alone.  See In re Luna, 406 F.3d 1192, 1205 (10th Cir.

2005) (citations omitted).  The phrase "to the extent" entails a fact-

intensive analysis in which "a court must ask whether [a] person is a

fiduciary with respect to the particular activity at issue."  Baker v.

Kingsley, 387 F.3d 649, 660 (7th Cir. 2004), quoting Plumb v. Fluid

Pump Serv. Inc., 124 F.3d 849, 854 (7th Cir. 1997).  Indeed, an

individual need not be expressly designated as a plan fiduciary; fiduciary

status should be analyzed "in functional terms of control and authority

over the plan." Ruiz v. Continental Cas. Co., 400 F.3d 986, 990 (7th Cir.

2005), citing Mertens v. Hewitt Assocs., 508 U.S. 262, 113 S. Ct. 2063,

124 L. Ed. 2d 161 (1993).

    The Seventh Circuit has not held precisely when unpaid ERISA

contributions qualify as plan assets.  However, the court in Central Ill.

Carpenters conducted a thorough survey of courts' holdings in similar

circumstances.  The Central Ill. Carpenters court held that absent

contractual language that states otherwise, employee contributions

withheld from paychecks are plan assets while still in an employer's

control, but that employer contributions are merely contractual duties of the employer toward the fund and confer on officers or directors no fiduciary duties.  See Central Ill. Carpenters, 516 F. Supp. 2d at 936-37; Luna, 406 F.3d at 1205-06.  However, the Central Ill. Carpenters court noted that other courts have held that specific language in plan documents or governing trust documents can override the general principle that employer contributions cannot create fiduciary duties. Central Ill. Carpenters, 516 F. Supp. 2d at 936-937, citing ITPE Pension Fund v. Hall, 334 F.3d 1011, 1014 (11th Cir. 2003) (additional citations omitted).  Significantly, the court in Luna noted that the language of the collective bargaining and trust agreements at issue were "at best ambiguous regarding the point when unpaid contributions become plan assets" when it held that employer contributions created no fiduciary duties.  Luna, 406 F.3d at 1200-201; see also Central Ill. Carpenters, 516 F. Supp. 2d at 937 (noting that governing documents "provide [no] guidance in determining whether unpaid contributions constitute assets of the Funds").

Here, Plainiff alleges Article VI(B)(1) of the RTOA specifically states that all contributions owed to the Fund are deemed to be trust funds. The Second Amended Complaint also alleges specific statements made by Defendant Hacker indicating his exercise of authority to not pay contributions to the Fund. Although the allegation regarding Defendant Herman's involvement in the decision making process is based only on information and belief, the role of a corporate director and officer in the internal decisions of the company is peculiarly within the Defendants' knowledge. These allegations are sufficient to state a claim for breach of fiduciary duty. The Court has noted above that other courts have varied, depending on the circumstances, on the issue of whether an employer who fails to make contributions to an ERISA plan is acting in a fiduciary capacity when it does so or fails to do so. The Court need not make such a determination on a motion to dismiss. Therefore, Defendant's Motion to Dismiss as to Count I of the Second Amended Complaint will be denied.

B.  Count II: Breach of the Trust Agreement

In Count II, Plaintiff contends the terms of the Trust Agreement make Defendant's Hacker and Herman personally liable for the amounts claimed.  When "the plaintiff submits along with its complaint copies of contracts and other documents referenced therein, the court may consider them."  <u>Metro Federal Credit Union v. Federal Insurance Co.</u>, 607 F. Supp. 2d 870, 873-74 (N.D. Ill. 2009).  "[I]f the unambiguous terms of an attached contract conflict with the plaintiff's allegations, the contract controls."  The Agreement states the following:

> Where an audit discloses a substantial difference between hours actually worked and an employee's hours reported to the Trust by his Employer, or where the matter has been referred to Fund Counsel for collections or to obtain an audit, regardless of whether the audit discloses a delinquency, the Employer must pay the cost of the audit. Furthermore, where such audit discloses any willful violation of any of the requirements of the Trust Agreement or rules and regulations adopted in connection herewith, those officers and directors of such Employer, if a corporation, who supervised the completion of the report forms, signed report forms, or can be determined to have had personal knowledge of such conduct, shall be personally liable for any underpayment or other pecuniary loss to the Fund as a result of such conduct.  Nothing herein shall prevent a personal liability for owners or partners who are not otherwise incorporated. . . .

In the event an Employer party to this Trust Agreement
or otherwise bound thereby becomes delinquent in his
contributions and the Trustees place the account in the hands
of legal counsel for collection, said delinquent Employer shall
be liable for reasonable attorney's fees and for all reasonable
costs incurred in the collection process, including court fees,
audit fees, etc.

Defendants argue that the separation into a second paragraph of

conditions pertaining to delinquent employers implies that only its

provisions could be pertinent to the present case.  Reading the first

paragraph to refer only to employers who return willfully inaccurate

report forms, Defendants assert that the Trust Agreement makes H&H

Trackworks liable and preclude's Defendants Hacker's and Vincent's

personal liability.  In relevant part, the language  of the Trust Agreement

that creates personal liability states: "where such audit discloses any

willful violation of any of the requirements of the Trust Agreement or

rules and regulations adopted in connection herewith, those officers and

directors of such Employer, if a corporation, who supervised the

completion of the report forms, signed report forms, or can be

determined to have had personal knowledge of such conduct, shall be

personally liable for any underpayment or other pecuniary loss to the

Fund as a result of such conduct."

Count II of the Second Amended Complaint alleges, in part, that

an audit showed Defendants owed $41,281.16 in contributions, interest,

liquidated damages, and audit costs for the period from January 1, 2006

through December 31, 2008.  Plaintiff alleges Defendants willfully

violated the terms of the Trust and RTOA Agreements by failing to make

prompt contributions to the Trust Fund and willfully diverted plan assets

and used those assets for other purposes.  Further, Plaintiff alleges

Defendants Hacker and Herman both had personal knowledge of the

willful conduct and that Defendant Hacker supervised the completion of

the report forms and the report forms contained his signature stamp.

Therefore, Plaintiff has sufficiently alleged a breach of the Trust

Agreement against Defendants Hacker and Herman to survive dismissal

under 12(b)(6).

C.  Count III-Alter Ego Liability

Plaintiff alleges in Count III of the Second Amended Complaint

that Track Services, Inc. is the "alter ego" of H&H Trackworks, Inc.  In

general, the alter ego doctrine analysis incorporates the single employer

doctrine, which determines when two employers will be treated as a

single entity.  See Boudreau v. Gentile, 646 F. Supp. 2d 1016, 1021

(N.D. Ill. 2009) (citations omitted).  However, alter ego liability places

added emphasis on "the existence of a disguised continuance of a former

business entity or an attempt to avoid the obligations of a collective

bargaining agreement . . . . " Trustees of Pension, Welfare and Vacation

Fringe Ben. Funds of IBEW Local 701 v. Favia Elec. Co., Inc., 995 F.2d

785, 788-789 (7th Cir. 1993), quoting Int'l Union of Operating

Engineers v. Centor Contrators, 831 F.2d 1309, 1312 (7th Cir. 1987).

The following criteria are examined in determining whether two

companies are a single entity: (1) interrelation of operations, (2)

common management, (3) common ownership, and (4) centralized

control of labor relations.  Boudreau, 646 F. Supp. 2d at 1021, quoting

Moriarty v. Svec, 164 F.3d 323, 332 (7th Cir. 1998).  No single factor is

conclusive; the court must weigh the totality of the circumstances.

Esmark, Inc. v. N.L.R.B., 887 F.2d 739, 753 (7th Cir. 1989).  Indeed,

"[m]eeting all of the elements of the single employer doctrine is not

essential to a finding that the alter ego doctrine applies."  Favia Elec.

Co., 995 F.2d at 789 (citations omitted).  Courts have found alter ego

relationships even when there is no evidence of common ownership.  See

Central States Pension Fund v. Sloan, 902 F.2d 593, 597 (7th Cir. 1986).

Thus, "unlawful motive or intent are critical inquiries in an alter ego

analysis . . . ."  Favia Elec. Co., 995 F.2d at 789, quoting Centor

Contractors, 831 F.2d at 1312.  Finally, "[n]either the courts nor the

National Labor Relations Board have limited the alter ego analysis to

those fact patterns where the original employer has disappeared entirely .

. . . "  Central States, 902 F.2d at 597 (7th Cir. 1990), quoting Crest

Tankers, Inc. v. National Maritime Union, 796 F.2d 234, 238 (8th Cir.

1986).

Plaintiff has not alleged that H&H Trackworks and Track Services

shared common management.  However, Plaintiff has affirmatively

stated that Track Services, Inc. is owned by the spouses of Defendants

Hacker and Herman, not the Defendants themselves.  Moreover,

Plaintiff's alleges that Track Services, Inc. is in the same field as H&H

Trackworks, employs a significant number of former H&H Trackworks

employees following layoffs, and uses leased equipment from H&H

Trackworks raises a plausible claim for relief based on alter ego liability.

The pleadings, taken in the most favorable light, demonstrate that Track

Services uses H&H equipment for the same purposes for which it was

used by H&H.  The fact that the lease agreement for such equipment

between Track Services and H&H is based on market rates is offset by

the significant amount of money H&H has paid Track Services since the

former corporation's bankruptcy.  Further, the assets and gross receipts

of H&H leading up to its bankruptcy, coupled with the layoffs and

subsequent hiring by Track Services of ten H&H employees, allow a

plausible inference of an attempt to avoid ERISA obligations.  Finally,

Defendant's suggestion that the lack of common ownership or the

continued existence of H&H renders Plaintiff's claims generally

implausible runs counter to Seventh Circuit precedent.  See Central

<u>State's</u>, 902 F.2d at 597.  Therefore, Defendants' Motion to Dismiss Count III will be denied.

## IV. CONCLUSION

THEREFORE, Defendant's Motion (d/e 19)is DENIED.  This matter is referred back to Judge Cudmore for further pre-trial proceedings.

IT IS SO ORDERED.

ENTER: October 19, 2011.

FOR THE COURT:

s/ Sue E. Myerscough
SUE E. MYERSCOUGH
United States District Judge